UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SABINA LOVING, *et al.*, | |
| **Plaintiffs,** | |
| v. | Civil Action No. 12-385 (JEB) |
| INTERNAL REVENUE SERVICE, *et al.*, | |
| **Defendants.** | |

MEMORANDUM OPINION

      To close a gap in the federal oversight of tax professionals, in 2011 the Internal Revenue Service began regulating hundreds of thousands of non-attorney, non-CPA tax-return preparers who prepare and file tax returns for compensation.  The new regulations require each such preparer to pass a qualifying exam, pay an annual application fee, and take fifteen hours of continuing-education courses each year.  Agency action, however, requires statutory authority.  The IRS interpreted an 1884 statute as enabling these new regulations.  That statute allows the IRS to regulate "representatives" who "practice" before it.  Believing that tax-return preparers are not covered under the statute, and thus cannot be so regulated, Plaintiffs – three independent tax-return preparers – brought this suit.  Plaintiffs and the Government have now cross-moved for summary judgment.  Concluding that the statute's text and context unambiguously foreclose the IRS's interpretation, the Court will grant Plaintiffs' Motion.

I.     **Background**

      A.     <u>Statutory and Regulatory Framework</u>

      This case turns on whether certain tax-return preparers are representatives who practice before the IRS, and thus are properly subject to the new IRS regulations.  (Preparers who are

attorneys, CPAs, enrolled agents, or enrolled actuaries are otherwise regulated by the IRS and thus have no bone to pick with the new regulations.  See 31 C.F.R. § 10.3 (2009).)  Before probing that question, however, it helps to know something about the IRS adjudication process. The Court therefore begins by outlining how the IRS resolves disputes about tax liability, then moves to the statutes and regulations at issue in this case.

      1.      *Process for Adjudicating Federal Income Taxes*

"The Internal Revenue Service is a bureau of the Department of the Treasury under the immediate direction of the Commissioner of Internal Revenue."  26 C.F.R. § 601.101(a); see also 26 U.S.C. § 7803(a) (Commissioner of Internal Revenue is part of Treasury Department with duties and powers assigned by Treasury Secretary).  Taxpayers can progress through three stages of interaction with the IRS: assessment and collection, examination, and appeals.

First up is assessment and collection.  Our federal tax system "is basically one of self-assessment" in which each taxpayer must compute the tax due, file a return showing "facts upon which tax liability may be determined and assessed," and pay the tax due.  26 C.F.R. § 601.103(a).  After such a filing (or a failure to file), the Government performs an "assessment" – that is, "the calculation or recording of a tax liability."  United States v. Galletti, 541 U.S. 114, 122 (2004); see 26 U.S.C. §§ 6201-6204.  "In most cases, the Secretary accepts the self-assessment and simply records the liability of the taxpayer. . . .  [W]here the Secretary rejects the self-assessment of the taxpayer or discovers that the taxpayer has failed to file a return, the Secretary calculates the proper amount of liability and records it in the Government's books." Galletti, 541 U.S. at 122.  After an assessment, the IRS collects unpaid taxes.  See 26 C.F.R. § 601.104(c)(1); see also 26 U.S.C. §§ 6301-6306.

Next, for some lucky taxpayers, comes the IRS audit, known in tax jargon as an "examination."  See 26 C.F.R. §§ 601.103(b), 601.105(a).  The IRS may conduct the examination by mail or by in-person interviews, and it will sometimes visit a taxpayer's home or business to examine his books and records.  See 26 C.F.R. § 601.105(b).  "During the examination of a return a taxpayer may be represented before the examiner by an attorney, certified public accountant, or other representative."  26 C.F.R. § 601.105(b)(1); see also 26 U.S.C. § 7521(b)(2) (during a taxpayer interview, taxpayer may suspend questioning to consult with "an attorney, certified public accountant, enrolled agent, enrolled actuary, or any other person permitted to represent the taxpayer before the Internal Revenue Service").

Last, if the taxpayer and the IRS still disagree, the taxpayer can request an in-person conference with an IRS "Appeals office."  See 26 C.F.R. §§ 601.103(b), (c)(1), 601.106.  While "[p]roceedings before Appeals are informal," taxpayers may "designate a qualified representative to act for them."  26 C.F.R. § 601.106(c).  (The taxpayer may then pursue appeals outside the IRS in the U.S. Tax Court, the U.S. Claims Court, or a federal district court.  See 26 C.F.R. § 601.103(c)(2)-(3).)

2.     *Statutory and Regulatory Scheme*

With that framework in mind, the Court now outlines the statutory and regulatory scheme at play in this case.  Under 31 U.S.C. § 330, originally enacted in 1884, the Treasury Secretary has authority to regulate people who practice before the Treasury Department.[1]  As the IRS is a

---

[1] The original 1884 statute said:

> [T]he Secretary of the Treasury may prescribe rules and regulations governing the recognition of agents, attorneys, or other persons representing claimants before his Department, and may require of such persons, agents and attorneys, before being recognized as representatives of claimants, that they shall show that they are of good character and in good repute, possessed of the necessary qualifications to enable them to render such claimants valuable service, and otherwise competent to advise and assist such claimants in the presentation of their cases.  And such Secretary may after due notice and opportunity for

bureau of the Treasury Department, see 26 C.F.R. § 601.101(a), this statute covers practice

before the IRS as well.  This is so even though the casual student of history knows that the

Sixteenth Amendment authorizing the modern federal income tax was not ratified until 1913.  In

full, the first two subsections of § 330 currently provide:

> (a) Subject to section 500 of title 5, the Secretary of the
> Treasury may –
>> (1) regulate the practice of representatives of persons
>> before the Department of the Treasury; and
>> (2) before admitting a representative to practice, require
>> that the representative demonstrate –
>>> (A) good character;
>>> (B) good reputation;
>>> (C) necessary qualifications to enable the
>>> representative to provide to persons valuable service; and
>>> (D) competency to advise and assist persons in
>>> presenting their cases.
>
> (b) After notice and opportunity for a proceeding, the
> Secretary may suspend or disbar from practice before the
> Department, or censure, a representative who –
>> (1) is incompetent;
>> (2) is disreputable;
>> (3) violates regulations prescribed under this section; or
>> (4) with intent to defraud, willfully and knowingly
>> misleads or threatens the person being represented or a
>> prospective person to be represented.
>
> The Secretary may impose a monetary penalty on any
> representative described in the preceding sentence.  If the
> representative was acting on behalf of an employer or any firm or
> other entity in connection with the conduct giving rise to such
> penalty, the Secretary may impose a monetary penalty on such
> employer, firm, or entity if it knew, or reasonably should have
> known, of such conduct.  Such penalty shall not exceed the gross
> income derived (or to be derived) from the conduct giving rise to
> the penalty and may be in addition to, or in lieu of, any suspension,
> disbarment, or censure of the representative.

---

hearing suspend, and disbar from further practice before his Department any
such person, agent, or attorney shown to be incompetent, disreputable, or who
refuses to comply with the said rules and regulations, or who shall with intent to
defraud, in any manner willfully and knowingly deceive, mislead, or threaten
any claimant or prospective claimant, by word, circular, letter, or by
advertisement.

Act of July 7, 1884, ch. 334, 23 Stat. 236, 258-59.

(Emphasis added.)

Using this statutory authority, the Secretary publishes regulations governing practice before the IRS in the Code of Federal Regulations, Title 31, part 10.  The Treasury reprints those regulations under the name "Treasury Department Circular No. 230."  The meat of Circular 230 is a long list of duties and restrictions relating to practice before the IRS, giving content to statutory terms like "incompetent" and "disreputable."  <u>See</u> 31 C.F.R. §§ 10.20-.38.  Circular 230 also lays out sanctions and sets the rules for disciplinary proceedings.  <u>See</u> 31 C.F.R. §§ 10.50-.82.  These regulations have long applied to attorneys, CPAs, and a handful of other specified tax professionals.  <u>See</u> 31 C.F.R. § 10.3 (2009).

In 2011, the IRS extended the reach of Circular 230 by bringing tax-return preparers under its coverage.  <u>See</u> Regulations Governing Practice Before the Internal Revenue Service, 76 Fed. Reg. 32,286 (June 3, 2011) (final rule) ("the Rule"); <u>see also</u> Regulations Governing Practice Before the Internal Revenue Service, 75 Fed. Reg. 51,713 (Aug. 23, 2010) (proposed rule).  Although technically promulgated by the Treasury Department, this Opinion will usually attribute the new Rule to the IRS.  Under the Rule, a tax-return preparer is a person who "prepares for compensation, or who employs one or more persons to prepare for compensation, all or a substantial portion of any return of tax or any claim for refund of tax under the Internal Revenue Code."  26 C.F.R. § 301.7701-15(a); <u>accord</u> 26 U.S.C. § 7701(a)(36); <u>see</u> 31 C.F.R. § 10.2(a)(8) ("<u>Tax return preparer</u> means any individual within the meaning of section 7701(a)(36) and 26 CFR 301.7701-15.") (emphasis in original).  The IRS estimated that the new Rule sweeps in 600,000 to 700,000 new tax-return preparers who were previously unregulated at the federal level.  <u>See</u> 76 Fed. Reg. at 32,299.

"Practice" as a tax-return preparer for the most part (and for our purposes) "is limited to preparing and signing tax returns and claims for refund, and other documents for submission to the Internal Revenue Service." 31 C.F.R. § 10.3(f)(2).  (In addition, if the IRS audits a tax return that the preparer signed, the preparer may represent the taxpayer during the examination.  See 31 C.F.R. § 10.3(f)(3).  Plaintiffs raise no objection to the IRS using such additional practice as a basis for regulation.)  The Rule thus encompasses those preparers whose only "appearance" before the IRS is the preparation and submission of tax returns, and this Opinion's subsequent references to tax-return preparers concern this limited role.

Before engaging in such practices, the new regulations force all tax-return preparers to register with the Secretary.  This registration requirement is the vehicle by which the Rule adds burdens on tax-return preparers.  To initially register, a tax-return preparer must pay a fee and pass a qualifying exam.  See 31 C.F.R. §§ 10.4(c), 10.5(b).  Then, to maintain her registration, each year the preparer must pay another fee and complete at least 15 hours of continuing-education courses.  See 31 C.F.R. §§ 10.6(d)(6), (e)(3).  Plus, on pain of censure, suspension, disbarment, or monetary penalties permitted by § 330(b), the preparer must comply with duties and restrictions imposed on other IRS practitioners.

    B.    <u>Factual and Procedural History</u>

Plaintiffs are three paid tax-return preparers who were not previously regulated by the IRS.  Sabina Loving works on the South Side of Chicago, serving low-income clients.  Pls. Mot., Exh. 2 (Decl. of Sabina Loving), ¶ 7.  Elmer Kilian has for decades prepared tax returns in his house.  Pls. Mot., Exh. 3 (Decl. of Elmer Kilian), ¶ 4.  And Giovanni Gambino is a financial planner who prepares tax returns for his clients.  Pls. Mot., Exh. 4 (Decl. of Giovanni Gambino), ¶¶ 2, 6.  Loving declares that she will have to increase her prices if forced to comply with the

Rule, likely losing customers.  See Loving Decl., ¶ 13. Kilian and Gambino declare that they will

likely close their tax businesses if forced to comply.  See Kilian Decl., ¶ 15; Gambino Decl.,

¶ 17.

Seeking injunctive and declaratory relief, Plaintiffs sued the IRS, the Commissioner of

Internal Revenue, and the United States under the Administrative Procedure Act, 5 U.S.C.

§§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  (As regulated parties,

Plaintiffs obviously have standing to challenge the regulations – particularly given the annual

fees, the entrance exam, and the hefty continuing-education requirements.)  Both sides now

move for summary judgment.

## II.      Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v.

Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the

substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at

895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477

U.S. at 248; Holcomb, 433 F.3d at 895.

Although styled Motions for Summary Judgment, the pleadings in this case more

accurately seek the Court's review of an administrative decision.  The standard set forth in Rule

56(c), therefore, does not apply because of the limited role of a court in reviewing the

administrative record.  See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006)

(citing Nat'l Wilderness Inst. v. Army Corps of Eng'rs, 2005 WL 691775, at *7 (D.D.C. 2005);

Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995), amended on other grounds, 967 F. Supp. 6 (D.D.C. 1997)).  "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  Id. at 90 (citation omitted).  "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  Id. (citing Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977), cited in Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003)).

　　　The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).  Such claims "are reviewed under the well-known Chevron framework."  Ass'n of Private Sector Colls. & Univs. v. Duncan, 681 F.3d 427, 441 (D.C. Cir. 2012) (citing Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837 (1984)). Chevron review entails a two-step inquiry.  The first step asks whether "the intent of Congress is clear" – that is, "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842.  "Under the first step of Chevron, the reviewing court must first exhaust the traditional tools of statutory construction to determine whether Congress has spoken to the precise question at issue."  Bell Atl. Tel. Co. v. FCC, 131 F.3d 1044, 1047 (D.C. Cir. 1997) (internal quotation marks omitted).  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Chevron, 467 U.S. at 842-43.  "[I]f the statute is silent or ambiguous with respect to the specific issue," the reviewing court must proceed to step two, asking whether the agency's interpretation "is based on a permissible construction of the statute."  Id. at 843.  The

agency's construction at step two is permissible "unless it is arbitrary or capricious in substance, or manifestly contrary to the statute." Mayo Found. for Med. Educ. & Research v. United States, 131 S. Ct. 704, 711 (2011) (citation omitted).

## III.   Analysis

At the threshold, the IRS claims that the Court can bypass the Chevron inquiry altogether because each agency has inherent authority to regulate those who practice before it. See Goldsmith v. Bd. of Tax Appeals, 270 U.S. 117, 122 (1926) ("[T]he general words by which the Board is vested with the authority to prescribe the procedure in accordance with which its business shall be conducted include as part of the procedure rules of practice for the admission of attorneys."). An agency, however, "cannot rely on its general authority to make rules necessary to carry out its functions when a specific statutory directive defines the relevant functions of [the agency] in a particular area." Am. Petroleum Inst. v. EPA, 52 F.3d 1113, 1119 (D.C. Cir. 1995). Because 31 U.S.C. § 330 specifically defines the Treasury Department's authority to regulate the people who practice before it, that statute controls the inquiry here.

Section 330(a) authorizes the Treasury Secretary to "regulate the practice of representatives of persons before the Department of the Treasury." In dispute is the IRS's interpretation that tax-return preparers are "representatives" who "practice" before the IRS. The battle here will be fought and won on Chevron step one; Plaintiffs offer no independent argument for why, if the statute is ambiguous, the IRS's interpretation would be "arbitrary or capricious in substance, or manifestly contrary to the statute" under Chevron step two. Mayo Found., 131 S. Ct. at 711. This case then boils down to one question: Is § 330 ambiguous as to whether tax-return preparers are "representatives" who "practice" before the IRS?

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).  These are the sources the Court considers here.  In so doing, it concludes that § 330 unambiguously forecloses the IRS's interpretation for three reasons:  First, the text of § 330(a)(2)(D) defines the "practice of representatives" in a way that does not cover tax-return preparers.  Second, the IRS's interpretation would displace an existing statutory scheme that comprehensively regulates penalties on tax-return preparers.  Third, under the IRS's interpretation, a federal statute that remedies abusive practice by tax-return preparers would be relegated to oblivion.  After examining the statutory text and context, the Court will resolve other arguments offered by the parties.

A.      Text of § 330

The inquiry here begins "where all such inquiries must begin: with the language of the statute itself."  Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S, 132 S. Ct. 1670, 1680 (2012) (citation omitted).  Again, § 330(a) says that "the Secretary of the Treasury may . . . regulate the practice of representatives of persons before the Department of the Treasury."

The IRS hurries through Chevron step one, arguing that the statute is ambiguous because it defines neither "representative" nor "practice," and both terms can have broad meanings.  See IRS Mot. at 15-16.  That simplistic approach will not fly, however.  "Ambiguity is a creature not of definitional possibilities but of statutory context . . . ."  Brown v. Gardner, 513 U.S. 115, 118 (1994).  Indeed, the D.C. Circuit has specifically rejected the argument that a statute is ambiguous when it fails to define a broad term.  See Goldstein v. SEC, 451 F.3d 873, 878 (D.C. Cir. 2006) ("The lack of a statutory definition of a word does not necessarily render the meaning

of a word ambiguous, just as the presence of a definition does not necessarily make the meaning clear."); id. ("If Congress employs a term susceptible of several meanings, as many terms are, it scarcely follows that Congress has authorized an agency to choose any one of those meanings.") (emphasis in original).

In any event, while the "practice of representatives" may not be defined in § 330(a)(1), the very next subsection of § 330 provides critical guidance on what the term means. "[B]efore admitting a representative to practice," § 330(a)(2) allows the Secretary to "require that the representative demonstrate . . . (D) competency to advise and assist persons in presenting their cases." Section 330(a)(2), like § 330(a)(1), does not disclose who these covered "representatives" are. But it does tell us what the representatives do – what their "practice" is, in the words of both subsections: representatives "advise and assist persons in presenting their cases." This statutory equating of "practice" with advising and assisting the presentation of a case provides the first strike against the IRS's interpretation. Filing a tax return would never, in normal usage, be described as "presenting a case." At the time of filing, the taxpayer has no dispute with the IRS; there is no "case" to present. This definition makes sense only in connection with those who assist taxpayers in the examination and appeals stages of the process.

The IRS seems to accept that tax-return preparers are not advising and assisting in presenting a case, focusing its fire instead on the premise of the argument. See IRS Reply at 13 ("It is nonsensical that Congress would authorize the Secretary to ensure the competency of those who present 'cases' but not those who prepare returns, particularly where only a fraction of prepared returns are audited and thereafter become 'cases' upon appeal before the Service."); id. at 2 ("Plaintiffs misread 31 U.S.C. § 330(a) because they again claim that the Secretary only has the authority to regulate the 'practice' of those who 'advise and assist persons in presenting their

cases.'"). This hardly seems as preposterous as the IRS would lead one to believe. Congress could well desire that those who represent taxpayers in examinations or appeals be more closely regulated than those who merely prepare returns. Just so, drafting a will can be done by anyone of mature age and sound mind, but disputing the will entails litigation in probate court, where representatives must be lawyers admitted to the court's bar. Compare, e.g., D.C. Code § 18-102, with D.C. Code § 20-107(a), and D.C. Super. Ct. R. Civ. P. 101(a).

The IRS also maintains that § 330(a)(2) "is a separate grant of authority" from § 330(a)(1), IRS Mot. at 27, and thus § 330(a)(2)(D) "in no way limits the Service's authority with respect to whom the Secretary may authorize to 'practice' before the agency, and the provision has no bearing on the definition of 'practice' or the bounds of activities that may be defined as 'practice' before the agency." IRS Reply at 14. As explained above, however, the grant of authority in § 330(a)(1) – which allows the IRS to regulate the "practice of representatives" – uses the same language as the grant of authority in its near neighbor, § 330(a)(2) – which allows the IRS to require certain qualifications before admitting a "representative to practice." And "[i]t is a well established rule of statutory construction that a word is presumed to have the same meaning in all subsections of the same statute." Allen v. CSX Transp., Inc., 22 F.3d 1180, 1182 (D.C. Cir. 1994) (internal quotation marks omitted). Since § 330(a)(2) makes clear that the "practice" of these representatives is "advis[ing] and assist[ing] persons in presenting their cases," "practice" in § 330(a)(1) must mean the same thing.

B.    Broader Statutory Context

Moving beyond the language of § 330, other related statutes also undercut the IRS's interpretation. Statutory language "cannot be construed in a vacuum. It is a fundamental canon

of statutory construction that the words of a statute must be read in their context and with a view

to their place in the overall statutory scheme." Roberts v. Sea-Land Servs., Inc., 132 S. Ct. 1350,

1357 (2012) (citation omitted).  Indeed, context can prove dispositive at Chevron step one.  See

FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132 (2000) ("In determining

whether Congress has specifically addressed the question at issue, a reviewing court should not

confine itself to examining a particular statutory provision in isolation.  The meaning – or

ambiguity – of certain words or phrases may only become evident when placed in context.").

Two aspects of § 330's statutory context prove especially important here.  Both relate to

§ 330(b), which allows the IRS to penalize and disbar practicing representatives.  First, statutes

scattered across Title 26 of the U.S. Code create a careful, regimented schedule of penalties for

misdeeds by tax-return preparers.  If the IRS had open-ended discretion under § 330(b) to impose

a range of monetary penalties on tax-return preparers for almost any conduct the IRS chooses to

regulate, those Title 26 statutes would be eclipsed.  Second, if the IRS could "disbar"

misbehaving tax-return preparers under § 330(b), a federal statute meant to address precisely

those malefactors – 26 U.S.C. § 7407 – would lose all relevance.  These two aspects are

considered in turn.

### 1.     *Penalty Provisions in Title 26*

Congress has already enacted a relatively rigid penalty scheme to punish misdeeds by

tax-return preparers.  Title 26, in fact, has at least ten penalties specific to tax-return preparers,

each of which targets particular conduct related to preparing and filing tax returns, and each of

which comes with a specific fine:

- § 6694(a): For an understatement of tax liability due to an unreasonable position, the greater of $1000 or 50% of the income that the preparer earned on the return;

- § 6694(b): For an understatement of tax liability due to willful or reckless conduct, the greater of $5000 or 50% of the income that the preparer earned on the return;

- § 6695(a): For failing to give a taxpayer a copy of her return without reasonable cause, $50 (with an annual maximum of $25,000);

- § 6695(b): For failing to sign a return without reasonable cause, $50 (with an annual maximum of $25,000);

- § 6695(c): For failing to list an identifying number without reasonable cause, $50 (with an annual maximum of $25,000);

- § 6695(d): For failing to retain a copy or a list of returns without reasonable cause, $50 (with an annual maximum of $25,000);

- § 6695(f): For endorsing or otherwise negotiating a check issued to a taxpayer, $500;

- § 6695(g): For failing to comply with the due-diligence IRS regulations on the earned income tax credit, $500;

- § 6713: For disclosing or otherwise using information the taxpayer shares for use in preparing a tax return, $250 (with an annual maximum of $10,000); and

- § 7216: For knowingly or recklessly disclosing or otherwise using information the taxpayer shares for use in preparing a tax return, one year in prison or $1000 fine.

Yet if § 330 covers tax-return preparers, the IRS would have the discretion – with few restraints – to impose an array of penalties for this sort of conduct.  Section 330(b) allows the Secretary to "impose a monetary penalty on any representative" who "is incompetent," "is disreputable," "violates regulations prescribed under" § 330, or, "with intent to defraud, willfully and knowingly misleads or threatens the person being represented or a prospective person to be represented."  The IRS may set the penalty between $0 and "the gross income derived (or to be derived) from the conduct giving rise to the penalty."  In other words, if the "representatives" that the IRS could penalize under § 330(b) include tax-return preparers, the IRS would be able to punish everything covered by the ten penalties in Title 26 – and more – with considerable discretion over the size of the penalty.  That unstructured independence by the IRS would trample the specific and tightly controlled penalty scheme in Title 26.  The existing § 330

14

regulations, moreover, need not actually overlap with the Title 26 scheme; in statutory

interpretation, the question is what the statute allows, not what the current regulations say.

When statutes intersect, the specific statutes (in Title 26) trump the general (§ 330).

"That is particularly true where . . . Congress has enacted a comprehensive scheme and has

deliberately targeted specific problems with specific solutions." RadLAX Gateway Hotel, LLC

v. Amalgamated Bank, 132 S. Ct. 2065, 2071 (2012) (internal quotation marks omitted); see also

Brown & Williamson Tobacco, 529 U.S. at 133 ("the meaning of one statute may be affected by

other Acts, particularly where Congress has spoken subsequently and more specifically to the

topic at hand").  While the general/specific canon most often applies when the general and

specific statutes point in opposite directions, the Supreme Court recently stressed that the canon

also applies when both statutes authorize similar action, as here:  "[T]he canon has full

application as well to statutes such as the one here, in which a general authorization and a more

limited, specific authorization exist side-by-side." RadLAX Gateway Hotel, 132 S. Ct. at 2071.

Because the U.S. Code already sets forth a comprehensive scheme targeting specific problems

with specific solutions, § 330(b) should not be interpreted to allow the IRS to penalize tax-return

preparers for conduct while preparing and filing returns.

Another statute confirms that § 330(b) does not authorize penalties on tax-return

preparers.  Under 26 U.S.C. § 6103(k)(5), the IRS may disclose certain penalties to state and

local agencies that license, register, or regulate tax-return preparers.  Specifically, § 6103(k)(5)

allows the IRS to disclose "information as to whether or not any penalty has been assessed

against such tax return preparer under section 6694, 6695, or 7216."  (Emphasis added.)  If the

IRS may penalize tax-return preparers under § 330(b), as the IRS claims, how curious that

§ 6103(k)(5) omits § 330 from the list of penalties reportable to state and local agencies.  Indeed,

the misdeeds punished by § 330(b) – incompetence, poor reputation, fraud, and regulatory

violations – would seem especially relevant to licensing agencies.  The better answer, consistent

with the general/specific canon, is that § 330(b) does not create a comprehensive penalty scheme

against tax-return preparers.

### 2.   *Injunction under 26 U.S.C. § 7407*

The U.S. Code also permits the IRS to enjoin tax-return preparers under 26 U.S.C.

§ 7407.  If a tax-return preparer has engaged in specified unlawful conduct and injunctive relief

is appropriate, § 7407 allows the IRS to sue the preparer to enjoin further violations:

> **(a) Authority to seek injunction**
> A civil action in the name of the United States to enjoin any person who is a tax return preparer from further engaging in any conduct described in subsection (b) or from further action as a tax return preparer may be commenced at the request of the Secretary. Any action under this section shall be brought in the District Court of the United States for the district in which the tax return preparer resides or has his principal place of business or in which the taxpayer with respect to whose tax return the action is brought resides. . . .
>
> **(b) Adjudication and decrees**
> In any action under subsection (a), if the court finds –
>> (1) that a tax return preparer has –
>>> (A) engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title,
>>> (B) misrepresented his eligibility to practice before the Internal Revenue Service, or otherwise misrepresented his experience or education as a tax return preparer,
>>> (C) guaranteed the payment of any tax refund or the allowance of any tax credit, or
>>> (D) engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws, and
>> (2) that injunctive relief is appropriate to prevent the recurrence of such conduct,
>
> the court may enjoin such person from further engaging in such conduct.

The court may enjoin the person from preparing tax returns, however, only if the preparer is such a habitual offender that an injunction against further violations would be insufficient:

> If the court finds that a tax return preparer has continually or repeatedly engaged in any conduct described in subparagraphs (A) through (D) of this subsection and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, the court may enjoin such person from acting as a tax return preparer.

26 U.S.C. § 7407(b).

Yet if § 330 covers tax-return preparers, the IRS could sidestep every protection § 7407 affords – judicial review, the demanding standards for the extraordinary remedy of an injunction, and the elevated hurdle for enjoining preparation of tax returns (instead of further violation) – while effectively obtaining the same result. That is because § 330(b) allows the Treasury Department to "disbar from practice before the Department" a "representative" who engages in the conduct listed in § 330(b) (incompetence, being disreputable, violating regulations, and fraud). Using this authority, the IRS could stop a person from preparing tax returns by "disbarring" her from "practice" before the IRS. Unlike under § 7407, however, disbarment under § 330 would put everything in the IRS's control (aside from limited judicial review, presumably, under the APA). With § 330(b) and § 7407 leading to the same destination, but § 330(b) offering a far easier path, it is hard to imagine the IRS turning to § 7407 more than once in a blue moon. The Court will not lightly assume that Congress enacted such a pointless statute.

Two points of caution bear mention here. First, contrary to Plaintiffs' claims, the IRS's interpretation of § 330 would not render § 7407 surplusage because § 7407 still offers a different remedy: a judicial injunction versus IRS disbarment. For the truly abusive tax-return preparer, perhaps the threat of judicial contempt that comes with an injunction would make § 7407 worth the trouble, even though IRS disbarment would surely be sufficient in almost every case.

Second, the Code's next section, 26 U.S.C. § 7408, might challenge the Court's doubt that Congress enacts duplicative statutes.  Section 7408, like § 7407, empowers the IRS to seek injunctions.  Although designed to combat tax shelters, § 7408's broad language allows the IRS to enjoin any "violation of any requirement under regulations issued under section 330 of title 31, United States Code" – potentially applying to all of Circular 230, not simply the tax-shelter regulations.  Unlike § 7407, which is limited to tax-return preparers, § 7408 allows injunctions against "any person."  Assuming that § 7408 means what is says and is not limited to tax shelters, § 7408 allows injunctive relief against "any person," including those attorneys and CPAs admittedly regulated under § 330(b).  So while § 7407 and § 330(b) authorize injunctive and disbarment remedies against the same people only if § 330 includes tax-return preparers, § 7408 and § 330(b) will authorize those remedies against the same people.

Section 7408 thus might seem to undercut the Court's analysis here:  Asserting that the IRS would almost never seek an injunction under § 7407 if it can instead disbar under § 330(b), the Court has said that the IRS's interpretation of § 330 makes § 7407 worthless.  But § 7408 on its very face similarly empowers the IRS to seek an injunction for attorney or CPA conduct covered by § 330, perhaps suggesting that this injunctive remedy remains useful despite the availability of remedies under § 330(b).  On the other hand, a § 7408 injunction is limited to barring further violations – in contrast to a § 7407 injunction which may bar preparation of tax returns – so § 7408 has far less overlap with § 330's disbarment remedy.  Despite flagging this issue here, the Court will pursue it no further.  The IRS never relied on (or even cited) § 7408, and the Court declines to generate arguments that the Government has failed to make.

Without deciding whether any of these three textual points alone would be dispositive, the Court concludes that together the statutory text and context unambiguously foreclose the IRS's interpretation of 31 U.S.C. § 330.

C.  Other Arguments

The IRS also makes a number of nontextual arguments in favor of its interpretation, but none of these can overcome the statute's unambiguous text here.  In the land of statutory interpretation, statutory text is king.

Repeatedly, the IRS argues that regulating tax-return preparers is vital, protecting dual federal interests in collecting the revenue due to the United States and in preventing preparers from bungling clients' returns.  The Court does not gainsay the importance of such regulation in a field of over 80 million tax returns; indeed, it may very well have significant salutary effects in several related areas.  At Chevron step one, however, such policy arguments have no relevance. "The Supreme Court has repeatedly made clear policy considerations cannot override our interpretation of the text and structure of the Act."  SEC v. Johnson, 650 F.3d 710, 715 (D.C. Cir. 2011) (internal quotation marks, alteration, and brackets omitted).

The parties also clash over which way the legislative history cuts.  No clear evidence of congressional intent emerges on this case's point of dispute, which is to be expected for a statute first enacted decades before the modern federal income tax and the modern tax-return preparer. This Court will not use "ambiguous legislative history to muddy clear statutory language." Milner v. Dep't of Navy, 131 S. Ct. 1259, 1266 (2011).  In the same vein, the parties point to unenacted bills introduced in recent sessions of Congress that would explicitly grant the IRS authority to regulate tax-return preparers.  "[F]ailed legislative proposals," however, "are a particularly dangerous ground on which to rest an interpretation of a prior statute."  Cent. Bank

of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 187 (1994).  "A bill can

be proposed for any number of reasons, and it can be rejected for just as many others."  Solid

Waste Agency of N. Cook Cnty. v. Army Corps of Eng'rs, 531 U.S. 159, 170 (2001).

      The IRS also argues that various regulations support its interpretation of § 330.  For

example, the IRS says it has long given preparers "limited practice rights," proving that preparers

"practice" before the IRS.  See IRS Mot. at 24-25 (citing 31 C.F.R. § 10.7(c)(1)(viii) (2009)).

But regulations promulgated by an agency cannot transform the meaning of the statute.

      Finally, the parties scuffle over whether the IRS has changed its interpretation of § 330

over time.  Plaintiffs seem to be correct that the new Rule contradicts previous interpretations of

§ 330.  See, e.g., Fraud in Income Tax Return Preparation: Hearing Before the Subcomm. on

Oversight of the H. Comm. on Ways & Means, 109th Cong. 24 (2005) (statement of Nancy J.

Jardini, Chief, Criminal Investigation Division, IRS) ("Tax return preparers are not deemed as

individuals who represent individuals before the IRS . . . .").  "Agency inconsistency," however,

"is not a basis for declining to analyze the agency's interpretation under the Chevron framework.

Unexplained inconsistency is, at most, a reason for holding an interpretation to be an arbitrary

and capricious change from agency practice under the Administrative Procedure Act."  Nat'l

Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 981 (2005) (citing 5

U.S.C. § 706(2)(A)).  While the Court could find no explanation for the IRS's flip-flop in the

new Rule, Plaintiffs have not claimed here that the IRS was arbitrary and capricious.  Any

change in the IRS's interpretation is therefore irrelevant.

D.     Remedy

Plaintiffs seek declaratory and injunctive relief.  By failing to object to these remedies,

Defendants have forfeited any challenge to them.  The Court, moreover, concludes that both

remedies are appropriate here.

Plaintiffs first seek a declaratory judgment that Defendants lack statutory authority to

promulgate or enforce the new regulatory scheme for "registered tax return preparers" brought

under Circular 230 by 76 Fed. Reg. 32,286.  The Court will grant this declaratory relief.

Plaintiffs also ask the court to permanently enjoin Defendants from enforcing this IRS

registration scheme against tax-return preparers.  As the scheme is impermissible, such

injunctive relief also appears proper.  The Supreme Court, however, has cautioned lower courts

deciding whether to issue an injunction to apply the traditional four-factor test instead of a

categorical rule, see eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393-94 (2006), so this

Court will do so.

The Supreme Court has said that, under "well-established principles of equity,"

> a plaintiff seeking a permanent injunction must satisfy a four-
> factor test before a court may grant such relief.  A plaintiff must
> demonstrate: (1) that it has suffered an irreparable injury; (2) that
> remedies available at law, such as monetary damages, are
> inadequate to compensate for that injury; (3) that, considering the
> balance of hardships between the plaintiff and defendant, a remedy
> in equity is warranted; and (4) that the public interest would not be
> disserved by a permanent injunction.

Id. at 391; see also Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743, 2756 (2010) (same).

While the eBay Court articulated the first two requirements as backward looking – requiring that

a plaintiff "has suffered" an injury – an injunction is obviously a forward-looking remedy, and in

applying the eBay test the Court has properly looked to the future threat of injury.  See

Monsanto, 130 S. Ct. at 2759-60 ("Most importantly, respondents cannot show that they will

suffer irreparable injury if APHIS is allowed to proceed with any partial deregulation, for at least two independent reasons.") (emphasis added).

Plaintiffs have satisfied all four prongs of this test.  Two Plaintiffs declare that they will likely close their tax businesses if forced to comply with the new Rule, see Kilian Decl., ¶ 15; Gambino Decl., ¶ 17, which the Court concludes would be an irreparable injury.  No remedy at law would adequately compensate that injury.  See Nat'l Mining Ass'n v. Army Corps of Eng'rs, 145 F.3d 1399, 1408-09 (D.C. Cir. 1998) ("Money damages were never sought in this action, and even if the government were somehow found to have waived its sovereign immunity against damage actions, it is hard to see the relevance of such remedies in the context of a pre-enforcement challenge to agency regulations.  The plaintiffs did seek (and obtain) a declaration of the [challenged] Rule's invalidity, but this brand of relief is itself more equitable than legal in nature.").  With an invalid regulatory regime on the IRS's side of the scale and a threat to Plaintiffs' livelihood on the other, the balance of hardships tips strongly in favor of Plaintiffs.  Finally, the public interest would be served by a permanent injunction because the IRS's new Rule is *ultra vires*. The Court will therefore grant permanent injunctive relief as well.

## IV.  Conclusion

For the aforementioned reasons, the Court will grant Plaintiffs' Motion for Summary Judgment and deny Defendants' Motion for Summary Judgment.  A separate Order consistent with this Opinion will be issued this day.

                                          */s/ James E. Boasberg*
                                          JAMES E. BOASBERG
                                          United States District Judge

Date:  January 18, 2013