IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SABINA LOVING; ELMER KILIAN; and JOHN GAMBINO, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:12-cv-00385-JEB |
| v. | ) ) | |
| UNITED STATES OF AMERICA; INTERNAL REVENUE SERVICE; and DOUGLAS H. SHULMAN, COMMISSIONER OF INTERNAL REVENUE, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF
MOTION TO SUSPEND INJUNCTION PENDING APPEAL**

The Plaintiffs brought the instant action alleging that the Service does not have authority to regulate tax return preparers and seeking an injunction against the enforcement of 76 Fed. Reg. 32,286. On January 18, 2013, the Court entered the Plaintiffs' requested injunction. The Defendants intend to file a Notice of Appeal from that decision within 30 days (or earlier if the Court so requires).[1]

---

[1] The Solicitor General has final authority on whether the Defendants will prosecute an appeal, and he has not yet made that decision. There is no requirement that the Defendants file a Notice of Appeal prior to seeking relief under Fed. R. Civ. P. 62. *See, e.g., Common Cause v. Judicial Ethics Committee*, 473 F.Supp. 1251, 1254 (D.D.C. 1979) (citing WRIGHT & MILLER, 11 Federal Practice and Procedure § 2904, at 324 (1973)) ("As Professors Wright and Miller explain, the rule permits the issuance of an injunction whenever there is reason to believe that an appeal will be taken, even before the actual notice of appeal has been filed."); *accord People for the Am. Way Found. v. United States Dep't of Educ.*, 518

The Court's injunction has far-reaching negative implications not only for the Service, but also for the public. Although the Court of Appeals may subsequently overturn that injunction, the Defendants and the public will nonetheless suffer irreparable harm if it remains in place during the pendency of the appeal. The Defendants, therefore, request that the Court suspend the injunction during the appeal pursuant to Fed. R. Civ. P. 62(c). In the alternative, the Court should suspend the injunction for at least 14 days to allow the Defendants to seek relief from the Court of Appeals.

## ARGUMENT

### I. The Court Should Suspend the Injunction During the Pendency of the Appeal.

When a party has appealed from an order entering an injunction, Fed. R. Civ. P. 62(c) allows the Court to suspend or otherwise modify that injunction pending the outcome of the appeal. Suspending an injunction pending appeal "is preventative or protective; it seeks to maintain the status quo pending a final determination on the merits of the suit." *Citizens For Responsibility And Ethics in Washington v. Office of Admin.*, 593 F.Supp.2d 156, 159 (D.D.C. 2009) (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir. 1977)). In considering a motion to suspend an injunction, courts consider four factors: (1) the movant's likelihood of success on appeal; (2) the

---

F.Supp.2d 174 (D.D.C. 2007); *Ctr. for Intern'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F.Supp.2d 21 (D.D.C. 2003) (granting stay on condition that movant file notice of appeal within 14 days).

likelihood of irreparable harm to the movant if the injunction is not suspended; (3) whether the other parties will be substantially harmed if the injunction is suspended; and (4) whether suspending the injunction serves the public interest. *Id.* (citing *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C.Cir. 1985)) (additional citations omitted). The Court need not find that all the factors are present – or present in equal force – to suspend or modify an injunction under Rule 62(c). *See, e.g., Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d at 974 ("A stay may be granted with either a high probability of success and some injury, or *vice versa.*"); *Ctr. for Intern'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F.Supp.2d at 21-23 (staying judgment even though only two factors favored movant). The balance of the relevant factors demonstrates that the Court should suspend its injunction until the D.C. Circuit decides the Defendants' appeal.

### A. The Defendants Have a Reasonable Likelihood of Prevailing on Appeal.

Recognizing the difficulty of asking a district court to determine whether its decision is likely to be overturned, the D.C. Circuit has held that a court can grant a Rule 62(c) motion without finding "that ultimate success by the movant is a mathematical probability, and indeed [ ] may grant a stay even though its own approach may be contrary to the movant's view of the merits." *Citizens For Responsibility And Ethics in Washington v. Office of Admin.*, 593 F.Supp.2d at 160 (quoting *Holiday Tours, Inc.*, 559 F.2d at 843) (internal quotations omitted).

Accordingly, if the balance of the other factors favors suspending an injunction, this remedy is appropriate so long as "a serious legal question is presented"; under those circumstances, "[t]here is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability of success." *Id.* (quoting *Holiday Tours, Inc.*, 559 F.2d at 844) (internal quotations omitted).

The Court essentially gave two reasons for rejecting the Defendants' position that the Service is authorized to regulate return preparers. **First,** the Court concluded that the Service cannot regulate return preparers pursuant to its inherent authority because 31 U.S.C. § 330 governs the Service's authority to regulate those who practice before it. (Opinion, 9 (Docket No. 22).) **Second,** the Court concluded that although section 330 authorizes the Service to regulate those who practice before it at the examination and appeals stages, section 330 does not authorize the Service to regulate those whose only activity before it is return preparation. (*Id.*, 10.) The Court's decision addressed a purely legal question, and the Defendants' appeal will, therefore, be decided *de novo*. *See Wyeth Holdings Corp. v. Sebelius*, 603 F.3d 1291, 1296 (D.C.Cir. 2010).

//

//

Without simply rehashing the arguments made at summary judgment, the Court of Appeals could reasonably disagree with this Court's reasoning. For example:

> **(1)** While the Court gave two separate reasons for rejecting the Service's position, the Court of Appeals could reasonably find that they prove too much when read together.  Specifically, if section 330 does not encompass return preparation within the Service's authority to regulate those who practice before it, then the Service should be able to regulate return preparers pursuant to its inherent authority.
>
> **(2)** Section 330(a)(2)(D) authorizes the Service to require that those who practice before it be competent "to advise and assist persons in preparing their cases."  The Court, therefore, found that this provision limits section 330(a)(1), and the Service can, therefore, *only* regulate those who prepare "cases," not those who prepare returns. (Opinion, 10-12.)  However, the Court of Appeals could reasonably find that section 330(a)(2) is a separate grant of authority from section 330(a)(1), not a limitation on it (much less a definition of practice before the Treasury Department).  The Court of Appeals could also reasonably find that section 330(a)(2)(C) (which authorizes the Service to require that those who practice before it have the necessary qualifications to provide valuable service) authorizes the regulation of return preparers independently of section 330(a)(2)(D).[2]
>
> **(3)** Because Congress enacted several provisions of Title 26 regulating return preparers between 1971 and 1988, the Court concluded that the 1884 Act – now in Title 31 – does not cover return preparers. (*Id.*, 12-16.)  But the Court of Appeals could reasonably find that Congress was reclaiming some of the long-unused authority it had previously delegated to the Service, rather than that the Service never had such authority in the first place.[3]  Alternatively, the Court of Appeals could reasonably find that

---

[2] At the very least, the Court of Appeals could reasonably find that section 330 is ambiguous and defer to the Service's interpretation. (*See* Opinion, 9 ("Plaintiffs offer no independent argument for why, if the statute is ambiguous, the IRS's interpretation would be 'arbitrary and capricious in substance, or manifestly contrary to the statute' under <u>Chevron</u> step two.").)

[3] The Court also found that 26 U.S.C. § 6103(k)(5) supports its interpretation of section 330. (*Id.*, 15-16.)  Specifically, section 6103(k)(5) allows the Service to disclose violations of sections 6694, 6695, and 7216 to state and local agencies but makes no mention of section 330. (*Id.*)  However, the Court of Appeals could

the existence of statutory penalties for return preparers is irrelevant to the question of whether section 330 allows the Service to regulate return preparers.

**(4)** The Court found that 26 U.S.C. § 7407, which allows the United States to enjoin an individual from preparing returns, shows that Congress did not intend for the Service to disbar return preparers pursuant to section 330. (*Id.*, 16-19.) However, the Court of Appeals could reasonably find that Congress merely understood that administrative disbarment, standing alone, would often be insufficient to deter unscrupulous return preparers. *Cf. United States v. Musin*, No. 4:09-cv-00062 (S.D.Iowa) (Docket No. 269) ("Neither an IRS bar nor a criminal conviction . . . has dissuaded [the return preparer] Defendants from taking bad deductions and otherwise cheating the IRS.").

### B. The Defendants Will Be Irreparably Harmed Without A Suspension of the Injunction.

As the Court noted, the Defendants' return preparer program is far-reaching, impacting between 600,000 and 700,000 preparers who are responsible for a substantial number of the more than 80 million returns filed each year. (Opinion, 5, 19.) The Service has worked for over two years to implement that program, and it has established more than 250 testing centers in each of the fifty states, the District of Columbia, and territories such as Puerto Rico and Guam. (Campbell Decl., ¶ 8); http://www.irs.gov/Tax-Professionals/Registered-Tax-Return-Preparer-Test-and-Special-Enrollment-Examination-Test-Center-Locations.

---

reasonably find that there was no need to mention section 330 because final disciplinary sanctions under section 330 are already publicly available. *See* http://www.irs.gov/Tax-Professionals/Enrolled-Agents/Announcements-of-Disciplinary-Sanctions.

6

Over 700,000 return preparers have registered with the Service, nearly 100,000 return preparers have registered to take the test, and the Service has received over $100 million in registration and competency testing user fees. (*Id.*, ¶¶ 7, 8, 10.) If history is any indication, the Service will have received almost $4 million more in user fees this month alone. (*Id.*, ¶ 10.) To date, the Service has spent over $50 million to get the program up and running. (*Id.*)

Immediately discontinuing the program would result in a substantial disruption to tax administration. (*Id.*, ¶¶ 5, 11-16.) Thousands of return preparers who have already submitted their user fees would demand refunds, and the United States would likely face numerous lawsuits – including class action lawsuits. (*See id.*, ¶ 12.) In addition, thousands of return preparers would undoubtedly continue studying for and attempting to take tests, and the Service would have to undertake an extensive and costly outreach program to attempt to notify those return preparers who have already registered and received a preparer identification number. (*See id.*, ¶ 13.) Standing alone, that aspect of shutting down the program would cost at least $238,000 and does not include the costs associated with modifying or breaching vendor contracts, shutting down computer systems, and finding other positions for the 167 Service employees currently working on the return preparer project. (*Id.*, ¶¶ 10, 12-13.) All these actions – and taxpayer funds – would be wasted if the Court of Appeals subsequently overturned this Court's decision and reinstated the return preparer program. Indeed, the Service would then have to enter into new contracts,

develop new systems, etc. (*Id.*, ¶ 14.) To describe such efforts as wasteful, inefficient, and irreparably harmful would be an understatement. (*See id.*, ¶ 5.)

### C. The Plaintiffs Will Not Be Substantially Harmed by a Suspension of the Injunction.

Despite the sworn declarations of two of the three Plaintiffs that they would likely close their businesses rather than comply with the new requirements, their attorney recently indicated in an interview with Forbes.com that "all of the Plaintiffs in the matter had already submitted their PTIN (preparer identification numbers) and had planned to continue preparing returns this season." Kelly Phillips Erb, *Attorney Who Bested IRS In Tax Preparer Regulation Case Speaks Out*, FORBES, Jan. 22, 2013, http://www.forbes.com/sites/kellyphillipserb/2013/01/22/attorney-who-bested-irs-in-tax-preparer-regulation-case-speaks-out/.[4] Moreover, Internal Revenue Service Notice 2011-6 already permits Plaintiffs to prepare returns until December 31, 2013, without passing the competency examination or becoming registered return preparers. Accordingly, suspending the injunction would not substantially harm the Plaintiffs during the foreseeable life of the appeal.

//

//

---

[4] (*But see* Killian Decl., ¶¶ 14-15 (Docket No. 12-3) (indicating that he would rather close his business than raise his fees); Gambino Decl., ¶ 17 (indicating that he objects to the new requirements on moral and economic grounds and would rather close his business than comply).)

8

**D. Suspension of the Injunction Would Serve the Public Interest.**

The D.C. Circuit has shown a willingness to suspend injunctions against the implementation of initiatives that benefit the public interest. *See Nat'l Family Planning and Reproductive Health Ass'n, Inc. v. Sullivan*, 979 F.2d 227, 230 (D.C.Cir. 1992) (staying injunction against certain doctor-patient counseling). As discussed in Section I.B., above, not suspending the injunction would cause irreparable harm to the Service and the public fisc. As such, a suspension is in the public interest. Indeed, irrespective of these costs, the administrative record shows overwhelming public support for the new regulations, and concerns have already been voiced about the impact of the Court's injunction on the public.[5]

In addition, one of the primary purposes of the return preparer scheme is to protect the public. *See* 76 Fed. Reg. 32,286 (program was implemented "to ensure uniform and high ethical standards of conduct for all tax return preparers"); (Campbell Decl., ¶ 14). As the Electronic Tax Administration Advisory Committee ("ETAAC") recently reported to Congress, the registration requirement addresses such problems as "lack of accountability, no professional training, and limited experience to outright preparer fraud." ETAAC ANNUAL

---

[5] (*See* Defs.' Memo. in Support of Summary Judgment, 6, 19 (various aspects of the program received approval rates between 88 and 98 percent)); *e.g.*, Saabira Chaudhuri, *Intuit 'Disappointed' in Decision Preventing IRS From Regulation Nonprofessional Preparers*, FOX BUSINESS, Jan. 22, 2013, http://www.foxbusiness.com/technology/2013/01/22/intuit-disappointed-in-decision-preventing-irs-from-regulating-nonprofessional/#_methods=onPlus One%2C_ready%2C_close%2C_open%2C_resizeMe%2C_renderstart%2Concircle d&id=I0_1358895768502&parent=http%3A%2F%2Fwww.foxbusiness.com.

REPORT TO CONGRESS, June 2012, www.irs.gov/pub/irs-pdf/p3415.pdf.  And the program does more than just ensure accurate returns and accountable preparers; it also helps to prevent, combat, and resolve identify theft, an area of major public concern.  (Campbell Decl., ¶ 17.)

Given that the return filing season commences on January 30, 2013 – approximately one week away – massive confusion is also sure to result if the injunction is not suspended.  (*Id.*, ¶ 11, 14, 15.)  Such confusion will not be limited to return preparers unsure of their obligations, either; the public, which has repeatedly been told that return preparers can register with the Service and take a test to demonstrate their competency, will also be confused when informed by return preparers that these standards have been cast aside.  (*Id.*, ¶ 14, 15.)  Accordingly, a suspension of the Court's injunction for the duration of the Defendants' appeal would serve the public interest.

II.     **In the Alternative, the Court Should Suspend the Injunction to Allow the Defendants to Seek a Stay from the Court of Appeals.**

Even if this Court does not suspend the injunction pending the Defendants' appeal, it is possible that the Court of Appeals would nonetheless find a suspension appropriate.  *See Nat'l Family Planning and Reproductive Health Ass'n, Inc. v. Sullivan*, 979 F.2d at 230 (staying injunction despite the fact that district court had originally denied the government's stay request).  At a minimum, the Court should, therefore, suspend the injunction for at least 14 days to allow the Defendants to seek such relief from the Court of Appeals.

## CONCLUSION

Based on the foregoing, the Court should suspend its injunction pending the outcome of the Defendants' appeal.  In the alternative, the Court should temporarily suspend its injunction to allow the Defendants to seek such relief from the D.C. Circuit.

Dated:   January 23, 2013                              Respectfully submitted,

/s/ Geoffrey J. Klimas
GEOFFREY J. KLIMAS
Trial Attorney, Tax Division
U. S. Department of Justice
Post Office Box 227
Washington, DC  20044
Telephone:  (202) 307-6346
Fax: (202) 514-6866
Email: geoffrey.j.klimas@usdoj.gov

OF COUNSEL:
RONALD C. MACHEN, JR.
United States Attorney