IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SABINA LOVING, et. al,, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Case No. 12-385 (JEB) |
| ) | |
| INTERNAL REVENUE SERVICE, et. al. ) | |
| ) | |
| Defendants. ) | |

### DECLARATION OF CAROL A. CAMPBELL

I, Carol A. Campbell, pursuant to the provisions of 28 U.S.C. § 1746, declare as follows:

1. I am the Director of the Return Preparer Office within the Internal Revenue Service ("Service").

2. My responsibilities include the executive management and oversight of one of the offices that administers the regulations governing practice before the Service (reprinted as "Treasury Department Circular No. 230"), including acting on applications to practice before the Service and administering competency testing and continuing education.

3. These aspects of my duties require knowledge and an understanding of the registered tax return preparer regulatory program covered by this Court's Order dated January 18, 2013 ("the Order").

4. After being notified of the Order, I directed that all reasonable efforts be undertaken to comply with the terms of the Order. I also consulted with

other Service executives and employees who are involved in the registered tax return preparer regulatory program, as well as with the attorneys in the Department of Justice and Service's Office of Chief Counsel, about its consequences for the Service.

5. I conclude that the Service will be irreparably injured absent a stay of the Order pending an appeal and final resolution of this lawsuit. The basis for my conclusion is set forth in paragraphs 6-17 of this declaration.

6. The Service's implementation of the registered tax return preparer regulatory program has been ongoing since 2010. Since that time, the Service has invested an enormous amount of time, money, and other resources to establish a registration system, minimum competency examination, and continuing education model, along with accompanying enforcement measures.

7. The Service began implementing the online preparer tax identification number ("PTIN") application process with the assistance of a contractual vendor for all tax return preparers, including attorneys, certified public accountants, and enrolled agents, in 2010. In 2012, over 744,000 tax return preparers registered with the Service. Ongoing activities in implementing the PTIN application for registered tax return preparers include, among others, reviewing the application, conducting tax compliance and suitability checks, running a call center to answer any questions, providing communications and customer support, and developing internal computer systems.

8. The Service began implementing the registered tax return preparer competency examination with the assistance of a contractual vendor in 2011.

Since November 2011, almost 99,000 preparers have scheduled appointments to take the registered tax return preparer test. There are over 250 testing centers across the United States and its territories. Ongoing activities in implementing the examination include drafting and reviewing the questions, setting up test sites, scheduling and proctoring examinations, running a call center to answer any questions, providing communications and customer support, and collecting the user fee to take the competency examination.

9. The Service began implementing the continuing education program in 2011. In 2012, the Service approved 642 continuing education providers who offered 18,000 courses for purposes of the continuing education program. Ongoing activities in implementing the continuing education program include approving continuing education providers who are authorized to offer continuing education.

10. There are 167 Service employees, including 119 user fee funded positions, supporting the return preparer program, and also providing preparer assistance, complaint referrals, compliance and enforcement oversight, and a multitude of other services in support of tax practitioners and other stakeholders. The total monetary costs spent by the Service on the return preparer program generally through the end of calendar year 2012 was approximately $54,317,115. On average, the Service has received approximately $3,689,489 in PTIN user fees (from September 2010) and $192,697 in competency testing user fees (from December 2011) each month. The combined PTIN user fee and competency testing user fees through the end of calendar year 2012 exceeded $105,810,000.

11. The 2013 filing season for 2012 individual income tax returns begins on January 30, 2013. The Service has made considerable efforts, expended significant resources, and made substantial progress in explaining the new registered tax return preparer regulatory program requirements and applicable timeframes to the tax return preparer community through published guidance, consistent messaging, and outreach efforts. Many tax return preparers have previously made arrangements to take the competency examination, which can include making travel arrangements and taking preparatory classes. Many tax return preparers have also previously made arrangements to comply with continuing education requirements. Similarly, continuing education providers have spent considerable resources in setting up their courses. Absent a stay, there will be confusion and uncertainty among tax return preparers regarding their responsibilities and obligations.

12. Irreparable harm will result from the Service's efforts to halt the registered tax return preparer regulatory program pending appeal. The Service will be forced to completely shutdown the IT systems associated with the PTIN application and renewal program. The Service will also be forced to completely shut down competency examination testing over 250 testing centers. As a result, this will require the Service to incur costs associated with the modification or breach of its contract with several of its contractual vendors. The Service will have to allocate resources and spend funds to address requests for refunds of various user fees, in addition to incurring costs and expending resources associated with litigation related to these fees. In addition, the Service will incur

costs associated with modifying and updating numerous websites that provide information regarding the registered tax return preparer regulatory program. All of these changes may require significant database reprogramming that would have to be reversed if the Order is reversed on appeal.

13. The Service will incur further costs and be irreparably harmed by the adverse impact the Order will have on its ongoing compliance and enforcement efforts regarding the registered tax return preparer regulatory program. The Service will have to notify all tax return preparers that the registered tax return preparer regulatory program can no longer be enforced. Sending information to every tax return preparer with a PTIN to inform them of the Order would cost the Service $238,000 at a minimum. Service employees working on the registered tax return preparer regulatory program will have to be reassigned. The Service has already expended substantial resources to train these employees on the registered tax return preparer regulatory program and will have to expend more resources to retrain these employees absent a stay of the Order.

14. If the Order is not stayed, but the Service is ultimately successful on appeal, the Service will have to incur substantial costs to restart the tax return preparer regulatory program. The cost and time involved in securing any necessary contracts with vendors will be included in these restart costs. Restarting the program after shutdown will also involve significant public outreach efforts and costs since there will likely be public confusion resulting from a shutdown and restart of the program.

15.   The taxpaying public will also be adversely impacted if the Order is not stayed. The taxpaying public is likely to be confused about the requirements for tax return preparers during the imminent filing season commencing January 30th. The Service made substantial education and outreach efforts to inform the unlicensed preparers of the new requirements for tax return preparers and has addressed in many public forums the goals of the registered tax return preparer regulatory program and the importance of that program to taxpayers. A sudden and immediate change in the credentialing and expected competency levels for tax return preparers will disrupt and impair tax administration.

16.   The registered tax return preparer regulatory program at issue in this case was established after a comprehensive review, the Return Preparer Review, that included substantial input from the tax return preparer community. The results of the Return Preparer Review demonstrated the necessity to address the problem of inaccurate returns prepared by tax return preparers. The Return Preparer Review highlighted other reports that concluded a significant percentage of tax return preparers failed to perform basic due diligence or took positions that the tax return preparer knew were not supportable. A principal objective of the registered tax return preparer regulatory regime was to protect the public from the injury caused by incompetent or disreputable tax return preparers. The Service estimates that fraud, abuse, and error relating to the earned income tax credit costs the taxpaying public about $13 billion annually; almost two-thirds of all returns claiming the earned income tax credit are prepared by tax return preparers. Furthermore, since the beginning of fiscal year

2010, over 500 tax return preparers have been criminally prosecuted by the Department of Justice based on referrals made by the Service. Without a stay of the Order, the Service will lose the substantial value added to its compliance and enforcement efforts by the registered tax return preparer regulatory program.

17.     Identity theft, which also includes theft by unauthorized tax return preparers, is also a major problem for the Service. The registered tax return preparer regulatory program assists in preventing, combating, and resolving the adverse effects resulting from identify theft perpetrated by unscrupulous individuals who file unauthorized returns for others with stolen information, or information from former clients. On the preventive side, the registered tax return preparer regulatory program requires that registered tax return preparers have a PTIN and, accordingly, permit the Service to identify and track the returns prepared by registered tax return preparers. The registered tax return preparer regulatory program also requires registered tax return preparers to pass a suitability check (including a criminal record check), preventing criminals from legally filing tax returns for others. The regulations also permit the Service to discipline a registered tax return preparer who has engaged in fraudulent conduct, including identity theft. Without a stay of the Order, the protection afforded by the registered tax return preparer regulatory program is lost.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 23rd day of January 2013, in Washington, D.C.

Carol A. Campbell
Director, Return Preparer Office
Internal Revenue Service
Washington, D.C. 20224