IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SABINA LOVING; ELMER KILIAN; and JOHN GAMBINO, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>UNITED STATES OF AMERICA; INTERNAL REVENUE SERVICE; and DOUGLAS H. SHULMAN, COMMISSIONER OF INTERNAL REVENUE, <br><br>　　　　Defendants. | No. 1:12-cv-00385-JEB |

**REPLY IN SUPPORT OF
MOTION TO SUSPEND INJUNCTION PENDING APPEAL**

On January 18, 2013, the Court enjoined Defendants from enforcing the Treasury Regulations that address registered tax return preparers. *See* 76 Fed. Reg. 32,286. Pending a final determination by the Solicitor General, Defendants intend to appeal and have moved the Court to suspend the injunction pending that appeal. In their motion, Defendants explained that: (1) they have a reasonable likelihood of prevailing on appeal; (2) they will suffer irreparable harm if the injunction is not suspended; (3) the Plaintiffs will not be substantially harmed by suspending the injunction; and (4) suspending the injunction will serve the public interest. (Defs.' Memo., 2-10 (Docket No. 23-1).)

Rather than address the merits of these arguments, the Plaintiffs spent 40 pages attacking the Service, the government, and undersigned counsel. (Pls.' Opp'n, 1-40 (Docket No. 24).) But these attacks do not change the relevant factors, which clearly show that the Court should suspend its injunction during Defendants' appeal. In the alternative, the Court should suspend the injunction for at least 14 days to allow Defendants to seek relief from the Court of Appeals.

## ARGUMENT

**I.     The Court Should Suspend the Injunction During the Pendency of the Appeal.**

As Defendants explained in their motion, courts consider the four factors listed above in determining whether to suspend an injunction. (Defs.' Memo., 2-3.) Because the balance of the relevant factors favors the requested relief, the Court should suspend its injunction.[1]

**A. Defendants Have a Reasonable Likelihood of Prevailing on Appeal.**

This case presents an issue of first impression, namely whether the Service can prescribe competency and suitability standards for commercial tax return preparers under either: (a) the Service's inherent authority, or (b) the authority given to it in 31 U.S.C. § 330. (Defs.' Memo., 4.) As Defendants explained in their

---

[1] The Plaintiffs devote multiple pages to advocating for a stringent standard that concededly has <u>not</u> been adopted by the D.C. Circuit. (Pls.' Opp'n, 4-5.) This Court is already aware that the Plaintiffs' requested standard is not the law, and Defendants will, therefore, not address this issue. *See Air Transport Assoc. of America, Inc. v. Export-Import Bank of the United States*, 840 F. Supp.2d 327, 333-34 (D. D.C. 2012) (J. Boasberg) (citations omitted). In any event, the record clearly shows that Defendants' motion should be granted irrespective of what standard the Court applies.

motion, the Court of Appeals – determining the appeal *de novo* – could reasonably disagree with this Court's reasoning:

> **(1)** The Court of Appeals could reasonably find the Service's inherent authority to regulate tax return preparers was not displaced by the grant of authority in section 330.
>
> **(2)** The Court of Appeals could reasonably find that section 330 grants the Service authority to regulate return preparers.
>
> **(3)** The Court of Appeals could reasonably find that Congress did not intend to displace the Service's section 330 authority to regulate return preparers when it enacted several provisions in Title 26 almost 100 years later. This is particularly true since the provisions of Title 26 cited by the Court provide sanctions for return preparers' misconduct that has *already* occurred, whereas section 330 and Circular 230 provide a fitness to practice framework that seeks to ensure that competency and suitability standards are satisfied *before* return preparers are allowed to practice.[2]
>
> **(4)** The Court of Appeals could reasonably find that Congress did not believe that the administrative remedy of disbarment was duplicative of the injunctive remedy provided by 26 U.S.C. § 7407.

(*Id.*, 5-6.)[3] Rather than address the merits of these arguments, the Plaintiffs simply rehash the Court's opinion and praise it, which is not surprising since the Court found in their favor. (Pls.' Opp'n, 6-7.) Given the Plaintiffs' inability to

---

[2] The Court's reliance on 26 U.S.C. § 6103(k)(5) as further support for its conclusion that the Title 26 after-the-fact provisions preclude Title 31 regulation is simply erroneous. Section 6103(k) permits disclosure of information otherwise protected by section 6103(a), as defined in 6103(b). Because Title 31 information does not fall within that definition, an exception allowing disclosure is not required. Moreover, even if Title 31 information was protected by section 6103 – which it is not -- section 6103(l)(4)(B) specifically addresses disclosure of 6103 protected information in a Title 31 proceeding.

[3] Although the Plaintiffs characterize these arguments as "new potential arguments the IRS has managed to brainstorm," they are contained in Defendants' summary judgment briefing. (*Compare* Pls.' Opp'n, 7 *with* Defs.' Reply in Support of Mot for Summary Judgment, 7-8, 15, 17-18 (Docket No. 17).)

articulate why Defendants' arguments do not present the requisite "serious legal issue," the Court should find that they do.  *See Citizens For Responsibility and Ethics in Washington v. Office of Admin.*, 593 F. Supp.2d 156, 160 (D. D.C. 2009) (citation omitted).

### B. **Defendants Will Be Irreparably Harmed Without A Suspension of the Injunction.**

In their motion, Defendants showed that the return preparer program impacts hundreds of thousands of return preparers, affects millions of tax returns each year, has cost millions of dollars to initiate, has taken several years of work and planning, and involves numerous Service employees. (Defs.' Memo., 6-8.)  Although the Plaintiffs quibble with some of these numbers (*e.g.*, whether the program impacts 700,000 return preparers or only 300,000), they concede these basic points.  (*See, e.g.*, Pls.' Opp'n, 2.)  The Plaintiffs further concede that discontinuing the program would result in thousands of return preparers demanding refunds of their user fees and numerous lawsuits.  (*Id.*, 17.)  Finally, the Plaintiffs concede that the Service would have to undertake an outreach program, modify or breach vendor contracts, shut down computer systems, and retrain and find new positions for the employees administering the program.  (*Id.*, 17-20.)  The Court should find that this factor favors granting Defendants' motion.

Rather than address the irreparable harm these things would visit on Defendants and tax administration generally, the Plaintiffs cavalierly retort that "[t]he sky is not falling" and make a string of arguments: (1) Defendants' attempt to comply with the Court's injunction undermines their instant motion; (2) the fact that implementing the program has taken longer than expected undermines Defendants' instant motion; (3) Defendants have exaggerated the harm claimed; (4) the harm is self-inflicted; (5) suspending the injunction would disrupt tax administration; and (6) the harms claimed are merely economic. (*Id.*, 1, 8-21, 28.) The Court should reject these meritless, scattershot arguments.

*First,* the Plaintiffs assert that the Service's attempt to comply with the Court's injunction shows that the injunction is not harmful. (*Id.*, 8-9.) But it is disingenuous for the Plaintiffs to use Defendants' good faith efforts to comply with the Court's order against them. *See Shannahan v. I.R.S.*, No. C08-0560JLR, 2010 WL 55866, at *6 (W.D. Wash. Jan. 4, 2010) ("the court is disinclined to countenance the argument that the IRS has undermined the basis for its [argument] . . . through the very act of complying with the court's order").

*Second,* the Plaintiffs assert that delays in the implementation of certain aspects of the return preparer program demonstrate that its total suspension would not be harmful. (Pls.' Opp'n, 9-10.)[4] To the contrary, the substantial time,

---

[4] To clarify, the continuing education requirement was in effect for 2012 and – prior to the Court's injunction – 2013. The Service provided, however, that return preparers would not lose their PTINs for failing to meet the continuing

5

money, and energy invested in trying to work out the program's kinks demonstrate precisely how the Service is harmed by having to completely shutter the program now.  The Service and the public should not be forced to start over and overcome those difficulties again in six months if the Court of Appeals reinstates the program.  If anything, the Service's decisions to provide temporary relief, deadline extensions, and program refinements demonstrate its commitment to soliciting and acting on feedback from practitioners.  These types of actions aid, not hinder, tax administration.

*Third,* using incendiary language, the Plaintiffs claim that the Service has exaggerated the harm that would occur if the injunction is not suspended.  (*Id.*, 2, 11-13.)  The Plaintiffs' argument reflects a fundamental misunderstanding of the way that the Preparer Tax Identification Number ("PTIN") program (which requires that paid return preparers, including attorneys, certified public accountants, registered tax return preparers, etc., register with the Service) intersects with the return preparer program at issue.  Specifically:

> • To efficiently implement the two programs, the Service created overlapping regulations.  For example, Treas. Reg. § 1.6109-2(d) provides that registered tax return preparers can obtain a PTIN.  As the regulation is currently written, however, individuals like the three Plaintiffs would not qualify for a PTIN *unless* they become registered tax return preparers authorized to practice under section 330 – a result that would be directly at odds with the Court's injunction.  *See* Treas. Reg. § 1.6109-2.[5]

---

education for 2012, so long as they made up those requirements in the following year.
[5] The Plaintiffs have not challenged the regulations promulgated under 26 U.S.C. § 6109.  The Eleventh Circuit, in a suit challenging those rules, upheld the

- The online registration system for the two programs is administered through a single computer system. *See* 75 F.R. 43110; 75 F.R. 60309. When registering for a PTIN, an individual is asked what qualification in Treas. Reg. § 1.6109-2 allows him to register (*e.g.,* is he an attorney, a certified public accountant, a registered tax return preparer, etc.). As the computer system is currently configured, individuals like the three Plaintiffs would not qualify for a PTIN unless they indicated that they were registered tax return preparers. And if they did select that option, the computer system would direct them to information about the examination and continuing education requirements. *See id.*; *see also* IRS Form W-12, IRS Paid Preparer Tax Identification Number (PTIN) Application and Renewal.

- The integration of the PTIN and return preparer programs also extends to their operating budgets. 75 F.R. 43110. Thus, there is no practical way to separate how the funds generated by the two programs have been used.

The harm outlined in Defendants' motion is accurate, substantial, and irreparable. (Defs.' Memo., 6-8.)

The Plaintiffs have not, and cannot, rebut the showing of substantial harm to Defendants if the injunction is not suspended. The Plaintiffs also gloss over many of the costs associated with terminating the program by asserting that the Service should just renegotiate its contracts (which may or may not be possible), turn off its seven computer servers (which would actually need to be individually shut down, decommissioned, backed-up, wiped, and reviewed), and reassign its employees (who would actually need to be retrained). (Pls.' Opp'n, 19-21.) This simplistic line of reasoning unfairly diminishes known, substantial costs just because they cannot currently be predicted with precision. In addition, it ignores the fact that all these costs and more will be wasted if the

---

regulations. *Jesse E. Brannen, III, P.C. v. United States,* 682 F.3d 1316 (11th Cir. 2012).

7

Court of Appeals reinstates the return preparer program at issue – a reality that the Plaintiffs refuse to countenance.

*Fourth,* the Plaintiffs characterize the harm to Defendants as "self-inflicted" because the Service implemented the program after the Plaintiffs' attorney said that he thought the new regulations were invalid. (Pls.' Opp'n, 13-14 (citing Dan Alban, the Plaintiffs' attorney).) This argument is not supported by any authority of which Defendants are aware, and it is certainly not supported by the facially distinguishable cases cited by the Plaintiffs. *See Safari Club Intern. v. Salazar*, 852 F. Supp.2d 102, 123 (D. D.C. 2012) (denying injunctive relief to plaintiffs whose asserted harm was refusing to participate in a regulatory scheme); *Lee v. Christian Coalition of Am., Inc.*, 160 F. Supp.2d 14, 33 (D. D.C. 2001) (denying injunctive relief to plaintiff who sought reinstatement after threatening her employer with physical violence). Taking this argument to its natural conclusion would delay virtually every agency initiative by years.

*Fifth,* the Plaintiffs claim that suspending the injunction would disrupt tax administration, but this argument boils down to the fact that they think the program should not have been implemented in the first place. (*See* Pls.' Opp'n, 14-16 (asserting that tax administration will "thrive" in the absence of the new regulation).) This claim has no relevance to the pending motion.

*Sixth,* the Plaintiffs claim that the harms complained of are merely economic. (Pls.' Opp'n, 21.) While economic harms are typically not considered irreparable, the Plaintiffs have cherry-picked this language without considering

8

its underlying rationale.  As this Court has said, economic harms are typically not considered irreparable "because economic injuries are generally in fact reparable with monetary damages in the ordinary course of litigation."  *Air Transport Assoc. of America, Inc.*, 840 F. Supp.2d at 335 (citing *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  That rationale is clearly inapplicable here, where Defendants and the public (including those who have already made substantial efforts to comply with the regulations and achieve registered tax return preparer status) cannot be made whole for their loss in the context of this APA litigation.  Indeed, shutting down a major public interest initiative is precisely the type of harm that warrants a suspension of the injunction until the parties are sure that the injunction will be permanent.[6]

---

[6] *See, e.g., O Centro Espirita Beneficiente Uniao De Vegetal v. Ashcroft,* 314 F.3d 463, 465-67 (10th Cir. 2002) (staying injunction against enforcement of the Controlled Substances Act); *Arkansas Peace Ctr. v. Arkansas Dep't of Pollution Control*, 992 F.2d 145, 147 (8th Cir. 1993) ("Defendants have also shown that they may suffer irreparable harm unless a stay is granted because their interests include the important public interest in protecting the environment by cleaning up hazardous waste sites."); *Florida ex rel Bondi v. U.S. Dep't of Health and Human Servs.*, 780 F. Supp.2d 1307, 1318 (N.D. Fla. 2011) (staying injunction against implementation of the Affordable Care Act pending appeal because to do otherwise "would be extremely disruptive and cause significant uncertainty"); *In the Matter of the North Carolina Bd. of Dental Examiners*, Docket No. 9343, 2012 WL 588756, at *3 (F.T.C. Feb. 10, 2012) (citation omitted) (staying cease and desist order entered against the North Carolina Board of Dental Examiners because it might be overturned on appeal, creating the potential for a "repeated change in policy" that "could create significant confusion about the law . . . for dentists, non-dentist teeth whiteners, and consumers"); *cf. Electronic Privacy Information Center v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 8 (D.C. Cir. 2011) (citation omitted) (leaving invalid security rule in place until agency could promulgate a valid one).

### C. **The Plaintiffs Will Not Be Substantially Harmed by a Suspension of the Injunction.**

In their motion, Defendants explained that – irrespective of the outcome of this litigation – all the Plaintiffs intended to continue preparing returns during the filing season that commenced yesterday, January 30, 2013. (Defs.' Memo., 8.) Defendants further explained that the Plaintiffs – like all return preparers – do not have to be registered tax return preparers to prepare returns during the current filing season. (*Id.*) The Plaintiffs concede both these points. (Pls.' Opp'n, 9-10.) Accordingly, the Court should find that the Plaintiffs would not be substantially harmed by suspending the injunction during the pendency of Defendants' appeal.

In response, the Plaintiffs make three assertions: (1) the Service could potentially harm them by moving the compliance deadline forward; (2) the Court has already decided this issue against Defendants; and (3) some return preparers might choose to close their businesses after the current filing season. (*Id.*, 22-27.) These assertions are without merit.

*First,* the Plaintiffs – without citing any authority – assert that the Service might suddenly and unexpectedly reverse course, demand an earlier compliance deadline, and thus cause them substantial harm. (*Id.*, 22-23.) The Court should not give any credence to this finger-in-the-wind speculation. Moreover, the Plaintiffs' concerns that the Service could make such a change on a whim are undercut by the fact that shortening a deadline requires an administrative review

10

process, Treasury approval, and issuing published guidance in the Internal Revenue Bulletin.

*Second,* the Plaintiffs assert that the Court has already decided this issue against Defendants by issuing an injunction in the first place. (*Id.*) Of course, the Court never addressed the particular question now before it, namely whether the Plaintiffs would be substantially harmed without an injunction <u>during the foreseeable life of Defendants' appeal.</u> Moreover, the Court's rationale for issuing the injunction assumed that the new regulations were invalid – the very point that Defendants intend to challenge on appeal. (*See* Opinion, 22 (Docket No. 22).)

*Third,* the Plaintiffs assert that some return preparers might ultimately choose to go out of business ***next filing season*** rather than comply with the regulation. (Pls.' Opp'n, 22-26.) Again, this assertion ignores the relevant inquiry. Moreover, the Plaintiffs' own cited authority shows that voluntarily leaving the marketplace rather than complying with a new regulatory scheme does not constitute the type of harm relevant to the pending motion. *See Safari Club Intern. v. Salazar*, 852 F. Supp.2d 102, 123 (D. D.C. 2012) (citing *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 847 (7th Cir. 2003)) ("plaintiffs who decline the opportunity to avail themselves of a regulatory scheme to avoid the very harm for which they seek injunctive relief have been denied the relief").

**D. Suspension of the Injunction Would Serve the Public Interest.**

In their motion, Defendants explained that it is in the public interest to protect the Service and the public. (Defs.' Memo., 9-10.) Defendants then explained that the administrative record shows overwhelming support for the regulations, a point which the Plaintiffs cannot seriously refute. (Defs.' Memo., 9.) Finally, Defendants explained that leaving the regulations in place protects the public (including return preparers and those who have already made substantial efforts to comply with the regulations), and failing to suspend the injunction would harm taxpayers, exacerbate the problem of identity theft,[7] and foster confusion. (*Id.*, 9-10.) Accordingly, the Court should find that this factor supports suspending the injunction.

In a zealous attempt to overcome this argument, the Plaintiffs offer a flurry of assertions: (1) the Court has already decided this issue against Defendants; (2) suspending the injunction will cause some return preparers to stop practicing at some unspecified time in the future; (3) suspending the injunction will encourage a return preparation "black market"; (4) Defendants are simply after more fees to fill the Service's coffers; (5) notice-and-comment rulemaking is unreliable; and (6) people cannot be confused about the program

---

[7] The Plaintiffs contend that identity theft is reduced by the PTIN program, not the return preparer program. (Pls.' Opp'n, 31-32.) But as explained in Section I.B., above, the two programs work together to combat identify theft and ensure the suitability of preparers. Moreover, the Plaintiffs are in no position to opine on the impact of the registered tax return preparer program on identity theft.

12

since they do not know about it. (Pls.' Opp'n, 27-38.) The Court should reject each of these assertions.

*First,* as with their substantial harm analysis, the Plaintiffs assert that the Court has already decided this issue against Defendants by issuing an injunction in the first place. (*Id.*, 27.) And as with substantial harm, the Court never addressed the particular question now before it, namely whether it is in the public interest to suspend the injunction <u>during the pendency of Defendants' appeal.</u> Moreover, the Court's reasoning for entering the injunction assumed that the new regulations were invalid – the very point that Defendants intend to challenge on appeal. (*See* Opinion, 22.)

*Second,* the Plaintiffs argue that some return preparers would rather leave the field than register, demonstrate minimum competency by passing a one-time examination, and take roughly one hour of continuing education classes per month (many of which are free, including sixteen online "webinars" offered by the Service). (Pls.' Opp'n, 28-32.) But this assertion is akin to suggesting that attorneys should not be required to pass a bar examination and take continuing legal education courses because it will discourage some from practicing law. In both situations, the slight burden on practitioners is greatly outweighed by the public benefit of ensuring competent, ethical representation.

*Third,* the Plaintiffs argue that having regulations in place will lead to some return preparers violating the regulations. (Pls.' Opp'n, 32 (asserting that the regulations will create a return preparer "black market").) But this circular

13

logic is akin to arguing against requiring driver's licenses because it will result in some motorists illegally driving without a license.

*Fourth,* the Plaintiffs substitute rhetoric for reason by asserting that the Service's goal is to continue "milking" the return preparer "cash cow." (Pls.' Opp'n, 3, 29.) In reality, the return preparer regulatory program neither generates profits nor raises revenue for the government; the Service can only use PTIN and registered tax return preparer competency examination user fees to recover its full costs in regulating return preparers – not for whatever other purpose the Plaintiffs like to imagine. 31 U.S.C. § 9701; Office of Management and Budget Circular A-25, 58 F.R. 38142 (July 15, 1993).

*Fifth* – because they cannot dispute that the administrative record overwhelmingly supports the return preparer program – the Plaintiffs take issue with notice-and-comment rulemaking itself, which they claim is dominated by "industry insiders" such as attorneys and certified public accountants. (Pls.' Opp'n, 27-28, 32-37.) But to the extent that there is any merit to the Plaintiffs' grievance on this front (which is doubtful), it is best addressed to Congress, which created the system they now rail against. *See* 5 U.S.C. § 564 (providing for notice-and-comment rulemaking); *see also* 5 U.S.C. §§ 500(b), (c) (providing that attorneys and certified public accountants can practice before the Service without fulfilling any additional requirements). In any event, the Plaintiffs' suggestion that the return preparer program is the product of a tainted lobbying effort is belied by support for the program from the Taxpayer Advocate, the Electronic

14

Tax Administration Advisory Committee, numerous consumer advocacy groups, and comments from individual practitioners during the Service's review of the return preparer industry and development of the return preparer regulatory program.[8]  Again, the Plaintiffs are merely indicating their personal distaste for the program rather than substantively addressing Defendants' motion.

*Sixth,* the Plaintiffs assert that the injunction creates no confusion because people are generally unaware of the program.  (Pls.' Opp'n, 37-39.)  This assertion is belied by the extensive outreach effort that the Service undertook to educate the public.  (*See* Campbell Dec., ¶ 15 (Docket No. 23-2).)  Even assuming that people are inadequately informed about the program (which the Plaintiffs cannot prove and Defendants dispute), this is a far cry from saying that they do not know about it at all.  And the confusion created by the Court's injunction will only be amplified if the injunction remains in place for several months before being lifted – at which point the Service would have to begin its outreach effort anew.  *See IRS Tackles Preparer Registration Injunction, Confusion Over PTINs,*

---

[8] (*See* Defs.' Memo., 10); Janet Novack, *As IRS Tax Filing Season Begins, Bad News for Honest Taxpayers*, FORBES, Jan. 23, 2013, http://www.forbes.com/sites/ janetnovack/2013/01/23/as-irs-tax-filing-season-begins-theres-bad-news-for-honest-taxpayers/; Eileen Ambrose, *Judge says IRS doesn't have authority to regulate tax preparers*, BALTIMORE SUN, Jan. 23, 2013, http://www.baltimoresun.com/business/consuming-interests-blog/bal-consuming-interests-judge-says-irs-doesnt-have-authority-to-regulate-tax-preparers-20130123,0,3767911.story?track=rss; Kathleen Pender, *IRS giving up on regulation of preparers*, SAN FRANCISCO CHRONICLE, Jan. 22, 2013, http://www.sfgate.com/business/article/IRS-giving-up-on-regulation-of-preparers-4215442.php.

BLOOMBERG BNA, Jan. 30, 2013, http://www.bna.com/irs-tackles-preparer-n17179872078/.

## II. In the Alternative, the Court Should Suspend the Injunction to Allow Defendants to Seek a Stay from the Court of Appeals.

As discussed in Section I.D., above, the Plaintiffs take the position that people will not be confused by the Court's injunction because they are not aware of the return preparer program. (Pls.' Opp'n, 37-39.) In a dramatic about-face, the Plaintiffs then take the position that a temporary suspension of the injunction "would create a high potential for confusion." (*Id.*, 39.) The Plaintiffs cannot have it both ways. Accordingly, if the Court denies Defendants' primary request for relief, then it should grant them a temporary reprieve to file a motion with the D.C. Circuit.

//
//

16

## CONCLUSION

Based on the foregoing, the Court should suspend its injunction pending the outcome of Defendants' appeal. In the alternative, the Court should temporarily suspend its injunction to allow Defendants to seek such relief from the Court of Appeals.

Dated:  January 31, 2013                              Respectfully submitted,

/s/ Geoffrey J. Klimas
GEOFFREY J. KLIMAS
Trial Attorney, Tax Division
U. S. Department of Justice
Post Office Box 227
Washington, DC  20044
Telephone:  (202) 307-6346
Fax: (202) 514-6866
Email: geoffrey.j.klimas@usdoj.gov

OF COUNSEL:
RONALD C. MACHEN, JR.
United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2013, I caused to be served via the Court's ECF system the foregoing REPLY IN SUPPORT OF MOTION TO SUSPEND INJUNCTION PENDING APPEAL on counsel for the Plaintiffs:

Dan Alban
Institute for Justice
901 N. Glebe Road, Suite 900
Arlington, VA  22203

/s/ Geoffrey J. Klimas
GEOFFREY J. KLIMAS
Trial Attorney, Tax Division
U. S. Department of Justice
Post Office Box 227
Washington, DC  20044
Telephone:  (202) 307-6346
Fax: (202) 514-6866
Email: geoffrey.j.klimas@usdoj.gov