UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**SABINA LOVING,** *et al.*,

    Plaintiffs,

        v.

**INTERNAL REVENUE SERVICE,** *et al.*,

    Defendants.

Civil Action No. 12-385 (JEB)

## MEMORANDUM OPINION AND ORDER

On January 18, 2013, this Court issued a decision granting Plaintiffs' Motion for Summary Judgment and enjoining the Internal Revenue Service from enforcing its new regulatory scheme for registered tax-return preparers. See Loving v. IRS, No. 12-385, 2013 WL 204667 (D.D.C. Jan. 18, 2013); ECF No. 21 (Order). The IRS now asks the Court to stay the injunction pending its appeal to the D.C. Circuit. Because the Court finds that the relevant factors weigh against such a stay, it will deny the Motion. The Court will, however, modify the injunction to make clear that its requirements are less burdensome than the IRS claims.

    **I.**    **Background**

In considering the request for a stay, it is important to state clearly what is at issue here and what is not. Plaintiffs make manifest in their pleadings that their lawsuit does not challenge the IRS's requirement that each tax-return preparer obtain a preparer tax-identification number (PTIN). See Opp. at 1-2. Indeed, Congress has specifically authorized the PTIN scheme by statute. See 26 U.S.C. § 6109(a)(4). That scheme, therefore, does not fall within the scope of the injunction and may proceed as promulgated, except that the IRS may no longer condition PTIN eligibility on being "authorized to practice" under 31 U.S.C. § 330. See 26 C.F.R.

1

§ 1.6109-2(d) ("[B]eginning after December 31, 2010, to obtain a preparer tax identification number or other prescribed identifying number, a tax return preparer must be an attorney, certified public accountant, enrolled agent, or registered tax return preparer authorized to practice before the Internal Revenue Service under 31 U.S.C. 330 and the regulations thereunder."). What Plaintiffs do challenge – and what the Court has enjoined – are the requirements that tax-return preparers (who are not attorneys, CPAs, enrolled agents, or enrolled actuaries) must pay some fees unrelated to the PTIN, pass a qualifying exam, and complete annual continuing-education requirements.  See Loving, 2013 WL 204667, at *1.

By way of additional background, both sides agree that the current deadline to complete the qualifying exam is December 31, 2013, and that earlier this year, before the Court's decision, the IRS indicated that the required continuing-education hours for 2012 may be made up in 2013. See Mot. at 8; Opp. at 8; Reply at 5 n.4.  As a result, were the injunction lifted, preparers would have until the end of this year to complete these requirements.

## II.     Legal Standard

Federal Rule of Civil Procedure 62(c) provides:  "While an appeal is pending from [a] . . . final judgment that grants . . . an injunction, the court may suspend [or] modify [the] . . . injunction on . . . terms that secure the opposing party's rights."  Although no notice of appeal has yet been filed, that is not a prerequisite for relief under this Rule so long as there is reason to believe an appeal will be taken.  See Common Cause v. Judicial Ethics Comm., 473 F. Supp. 1251, 1254 (D.D.C. 1979); 11 Wright & Miller, Federal Practice and Procedure § 2904, at 707-08 (3d ed. 2012).  The IRS's representations to that effect here are sufficient for it to invoke Rule 62(c).  See Reply at 1.

To assess the propriety of a stay pending appeal, the Court looks to four factors: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." Cuomo v. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985); see also Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 842 n.1 (D.C. Cir. 1977).

### III.   Analysis

#### A.   Likelihood of Prevailing on Merits

In considering the four factors, the Court begins with the likelihood of the IRS's success on appeal. As the IRS diplomatically notes, it is placed in the uncomfortable position of "asking a district court to determine whether its decision is likely to be overturned." Mot. at 3. The IRS is correct that the Court need not determine that it erred and will likely be reversed – an acknowledgment one would expect few courts to make; instead, so long as the other factors strongly favor a stay, such remedy is appropriate if "a serious legal question is presented." CREW v. Office of Admin., 593 F. Supp. 2d 156, 160 (D.D.C. 2009) (citation omitted); see also Holiday Tours, 559 F.2d at 843. Although the Court continues to believe its decision was correct, it is certainly cognizant that the issue is one of first impression and raises serious and difficult legal questions. If the other factors tip in favor of a stay, therefore, this factor will not preclude one.

#### B.   Harm to Movant

Arguing that it would be irreparably harmed without a stay, the IRS first contends that the injunction substantially disrupts the Service's tax administration. The IRS has established 250 testing centers, the program has cost over $50 million to roll out, and nearly 100,000 preparers

have registered to take the competency test.  See Mot., Decl. of Carol A. Campbell, ¶¶ 8, 10.  Shutting down the program would be costly and complex, and such steps would be rendered unnecessary if the Court's decision is reversed by the Court of Appeals.  See id., ¶¶ 12-14.

These harms, to the extent they exist, are hardly irreparable, and some cannot even be traced to the injunction.  See Wis. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) (To be irreparable, "the injury must be both certain and great; it must be actual and not theoretical. . . . [Also,] the party seeking [a stay] must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.") (emphasis, internal quotation marks, and brackets omitted).  First, the Court is not requiring the IRS to dismantle its entire scheme.  It may choose to retain the testing centers and some staff, as it is possible that some preparers may wish to take the exam or continuing education even if not required to.  Such voluntarily obtained credentials might distinguish them from other preparers.  Another reason some preparers may wish to take the exam is to hedge their bets in case of appellate reversal, just as the IRS may similarly decide it is financially more prudent not to shutter the centers in hopes of an appellate victory or congressional action.  Second, to the extent the IRS is concerned that testing centers and staff will be under-utilized in the coming months, that would be the case even without the injunction.  This is because the Service is currently requiring that neither testing nor continuing education be fulfilled until the end of 2013, so preparers would not have needed to take the exam and the courses anytime soon.  Instead, even with a stay, preparers would be free to wait and see what happens in the D.C. Circuit.  If they lose, there might still be time for them to take the test or courses before the end of the year.  Third, the IRS's numbers inflate the true effects of the injunction.  As Plaintiffs point out, the

IRS's expenses and staff cover both the registered-tax-return-preparer program and the PTIN program, and Plaintiffs do not challenge the latter. See Opp. at 11-12.

The IRS also argues that it will be harmed because it has received over $100 million in registration and testing fees, and, absent a stay, preparers will demand refunds or possibly sue. See Mot. at 7; see also Campbell Decl., ¶ 12. Yet, as just noted, that estimate combines revenue from both the PTIN and registered-tax-return-preparer programs, and the revenue from the latter program is significantly smaller. See Opp. at 11-12. The IRS's liability, moreover, turns on the case's merits, not on the stay. If the Court issues a stay and its merits decision is affirmed above, then the IRS will be on the hook for even more money in refunds. In any event, why should tax-return preparers continue to pay into a system the Court has found unlawful?

### C. Harm to Others

The Service next maintains that staying the injunction would not substantially harm Plaintiffs both because their attorney allegedly told a blogger from *Forbes* that they planned to continue preparing returns this season even without an injunction and because they still have until the end of the year to pass the exam. See Mot. at 8. The Court, as a threshold matter, credits sworn declarations of parties over blog posts that attribute comments to an attorney. And here, as noted in the Opinion, two Plaintiffs indicated that the new regulations would cause them to close their tax-preparation businesses. See Loving, 2013 WL 204667, at *4. In addition, if the injunction is stayed, then all preparers are faced with a Hobson's choice: they must decide whether (1) to skip the registration requirements, gambling on an affirmance by the Court of Appeals or a reversal that is issued early enough that they could still fulfill their requirements by the end of the year, or (2) to satisfy the testing and continuing-education requirements, knowing that this might well be wasted time, effort, and expense. The harm is thus considerable.

D.  Public Interest

In assessing where the public interest lies, the IRS argues both that a failure to suspend the injunction would harm "the public fisc," and that "the administrative record shows overwhelming public support for the new regulations," which are meant to protect the public. Mot. at 9; see also Campbell Decl., ¶¶ 15-17.  If the regulations are unlawful, however, the harm to those paying in is just as great (and perhaps considerably greater for certain tax-return preparers) as the deprivation of the same money is to the Government.  The money, the IRS acknowledges, moreover, can only be used to regulate return preparers.  See Reply at 14.  As long as portions of such regulations remain blocked, less money will be needed.

In addition, it is not disputed that these regulations work a substantial change in the oversight of the preparation of tax returns, given that preparers have never been previously licensed.  While the policy behind such regulations may indeed be wise, see Loving, 2013 WL 204667, at *11, the granting of the injunction effects far less a change in the landscape of tax preparation than does implementation of the regulations.  So if the *status quo ante* is a goal, it would counsel in favor of denying a stay.  Of course, should Congress deem such regulations in the public interest, there is nothing in the Court's decision that would preclude their statutory enactment.

As the factors beyond likelihood of success do not decisively tilt in favor of the IRS – indeed, they tip somewhat against – the Court sees no basis to lift its injunction pending appeal. Nor does the Court believe it warranted to suspend the injunction for fourteen days to permit the IRS to seek a stay in the Court of Appeals.  This would only lead to more confusion for preparers and their clients as the tax season gets underway.  While nothing in this decision prevents the IRS from seeking such relief there, the Court sees no benefit of a brief stay while it does so.

## IV. Conclusion

The Court, therefore, ORDERS that:

1. Defendants' Motion to Suspend Injunction Pending Appeal is DENIED; and

2. The Injunction is MODIFIED to make clear that the IRS is not required to suspend its PTIN program, nor is it required to shut down all of its testing and continuing-education centers; instead, they may remain, but no tax-return preparer may be required to pay testing or continuing-education fees or to complete any testing or continuing education unless and until this injunction is stayed or vacated by the Court of Appeals.

**SO ORDERED.**

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: February 1, 2013